# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAASON MCALLISTER,** | : | **CIVIL ACTION NO. 1:12-CV-2273** |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| v. | : | |
| **JOSHUA WIEKL, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Jaason McAllister ("plaintiff"), an inmate formerly housed at the Dauphin County Prison, Harrisburg, Pennsylvania, at all times material, commenced this civil rights action on November 15, 2012. (Doc. 1.) The matter is presently proceeding *via* an amended complaint filed on February 21, 2013. (Doc. 14.) Before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of defendants Joshua Weikel ("Weikel"), Michael Frankenstein ("Frankenstein"), Kevin Hoch ("Hoch"), Joseph Hoose ("Hoose"), Steven Smith ("Smith"), Elizabeth Nichols ("Nichols") and Brian Walborn ("Walborn").[1] (Doc. 11.) For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

---

[1] Notably, although the docket sheet reflects that the motion is also filed on behalf of defendant, Dominick DeRose, he is not included in the motion. (Doc. 15.) He will be directed to file an answer or appropriate pretrial motion. Also, defendant Alek Peters is not included in the motion. Defendant Peters has not yet been served.

I.   **Allegations of Amended Complaint**

Plaintiff alleges that prior to January 31, 2012, he complained to defendant Nichols about "continuing harassment," by correctional officer as "[s]he is legally responsible for the operation of DCP and for the welfare of all the inmates in the prison."  (Doc. 14, ¶¶ 2, 23.)  He alleges that she turned a blind eye to the correctional officers' unconstitutional behavior.  (Id. at ¶ 35.)

Thereafter, he "was retaliated against for filing grievances and complaining." (Id. at ¶ 23.)  Specifically, on January 31, 2012, defendants Hoose, Frankenstein, Weikel, and Alek Peters ("Peters") came to his cell "with false write ups" for inciting a riot and having contraband (candy) in the gym.  (Id. at ¶¶ 10-11.)  He was directed to move to the back of the cell, face the wall, and prepare to be cuffed behind his back.  (Id. at ¶ 12.)  He alleges that they entered his cell and "one of the officers" banged plaintiff's head off the wall.  (Id. at ¶¶ 10, 13.)  He was then roughly transported to segregation.  (Id. at ¶¶ 14-15.)  He further alleges that, when he reached his segregation cell, while his hands were still cuffed behind his back, defendant Hoose slammed his face chipping his three front teeth, and Weikel, Hoose and Hoch punched, kicked and elbowed him rendering him unconscious. (Id. at ¶¶ 16-17.)  Upon regaining consciousness, he states that he was subjected to more blows and kicks and that Weikel, Hoose, and Hoch remarked "[t]hat's what you get for filing grievances, I bet you wont [sic] snitch no more."  (Id. at ¶¶ 17-18.)

Plaintiff also asserts that defendant Smith, a lieutenant, knew that the correctional officers were going to use excessive force and that he allowed it and even encouraged it. (Doc. 14, ¶ 33.) After the assault, Smith collaborated with the correctional officers to "get their story strait [sic]," and blamed him for the attack by commenting that "you shouldn't complain to CID." (Id. at ¶ 20.) Smith then ordered that he be placed in a restraint chair for twelve hours. (Id.)

The alleged assault was investigated by defendant Walborn, a detective assigned to the Criminal Investigation Division "CID" of the Harrisburg Police Department. (Doc. 14, ¶ 8.) Plaintiff asserts that Walborn failed to protect him from impending danger and covered up the January 31, 2012 assault. (Id. at ¶ 24.)

## II.   Rule 12 (b)(6) Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**III.   Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

   **A.   Exhaustion of Administrative Review**

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000). It has been made clear that the exhaustion requirement is mandatory. See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures

"regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Defendants seek to dismiss the amended complaint based on plaintiff's admission in his original complaint (Doc. 1) that he did not exhaust the administrative review procedure available at the Dauphin County Prison. (Doc. 17, at 11.) However, the matter is presently proceeding on plaintiff's amended complaint (Doc. 14). When an amended complaint does not reference or incorporate the prior complaint, the modified complaint functions as the operative complaint, superseding the prior complaint in its entirety. W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) (citing New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996)); see also 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 at 636 (3d ed. 2010). Plaintiff's amended complaint does not reference or incorporate the prior complaint and is silent with respect to his efforts concerning exhaustion of available administrative procedures. Consequently, dismissal on the grounds of failure to exhaust is procedurally not available.

Even if plaintiff had included allegations concerning exhaustion in his amended complaint, the Court would not be able to dispose of the issue on a Rule

12(b) motion because the arguments advanced go beyond the pleadings. Defendants argue that despite being aware of the requirement, plaintiff failed to exhaust and failed to allege that he was prevented from pursuing the administrative process in any manner. (Doc. 17, at 11.) Plaintiff rebuts this argument by stating that restrictions prevented him from pursuing administrative relief. He indicates that immediately following the assault, he was put in a strip cell without access to either a pencil or paper. (Doc. 25, at 7.) Within ten days, on February 10, 2012, he was moved to the State Correctional Institution at Camp Hill where he remained in the restricted housing unit until he was subsequently transferred to the State Correctional Institution at Forest. (Id.) He also states that state correctional institutions will not accept county jail complaints. (Id.) Lastly, he states that "[b]y reviewing D.C.P.'s Grievance Guidelines one can draw the conclusion that there was no way for [him] to redress the complaint process." (Id.) The arguments of both parties indicate that the issue is more appropriately disposed of in the context of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

    **B.**    **Personal Involvement**

Defendants seek to dismiss the complaint against defendants Smith, Nichols and Walborn based on plaintiff's failure to allege the requisite personal involvement in unconstitutional conduct. (Doc. 17, 8-9, 12.) Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Contemporaneous, personal knowledge and acquiescence, not after the fact knowledge, is required. See Rode, 845 F.2d at 1207; Evancho, 423 F.3d 347. Significantly, allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

    1.    Defendant Nichols

Plaintiff seeks to impose liability on defendant Nichols because she is legally responsible for the operation of the prison and the welfare of the inmates. However, he fails to set forth specific instances of constitutional misconduct, and he does not allege that she knew of, and acquiesced in, or played an affirmative part in the physical assault or the retaliation of which he complains. Inasmuch as he attempts to impose liability based upon defendant Nichols' failure to take actions on his complaints of harassment, an inmate's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance or complaint, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. Brooks v. Beard, 167

8

F. App'x 923, 925 (3d Cir. 2006); see also Croom v. Wagner, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006); Ramos v. Pennsylvania Dept. of Corrs., No. 06-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006).  The complaint against defendant Nichols is therefore subject to dismissal.

    2.    Defendant Smith

Plaintiff alleges that "[b]y knowing 1st hand that excessive force was about to be used and allowing it to take place is encouraging the misconduct so Lt. Smith violated by 8th amendment to the United States Constitution, and caused me pain suffering, physical injury." (Doc. 14, ¶ 33.)  Such allegations are sufficient to indicate Smith's contemporaneous, personal knowledge and acquiescence in the unconstitutional conduct.  The motion will be denied with respect to defendant Smith.

    3.    Defendant Walborn

Plaintiff alleges that defendant Walborn violated his eighth amendment rights because he "turn[ed] a blind eye" to the unconstitutional conduct of Weikel, Frankenstein, Hoose, and Hoch.  As noted *supra*, personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Such allegations, however, must be made with appropriate particularity.  Rode, 845 F.2d at 1207-08.  Plaintiff fails to allege that Walborn had personal knowledge or involvement in the assault that took place on January 31, 2012.  Consequently, the complaint will be dismissed as to defendant Walborn.

9

To the extent that plaintiff attempts to impose liability on Walborn based upon his decision to criminally charge him, rather than the defendants, such a claim has no merit. It is well established that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973).

### C.     Official Capacity

"Personal-capacity damage suits under section 1983 seek to recover money from a government official, as an individual, for acts performed under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988); see Monell v. Department of Social Servs., 436 U.S. 658, 690 n. 55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Plaintiff's official capacity claims against the Dauphin County Prison correctional officers must therefore be analyzed as claims against Dauphin County. See Gregory, 843 F.2d at 120.

Local governments are "persons" under § 1983 and can be liable for the actions of their agents, see Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690, but there is no *respondeat superior* liability under § 1983. The County must have known of its agent's action and approved of it. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986).

County liability is established only by proof that the county agency had an official policy or custom permitting or requiring its agent's action. See McMillian v. Monroe Cnty., 520 U.S. 781, 783 (1997); Monell, 436 U.S. at 691. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir.1990)).

Plaintiff fails to allege that the Dauphin County Prison had a policy or practice permitting its officers to engage in the unconstitutional conduct of which he complains. He is therefore unable to maintain an action against Dauphin County. Hence, the official capacity claims against these defendants will be dismissed.

**IV.    Conclusion**

For the reasons set forth above, the motion (Doc. 15) to dismiss filed on behalf of defendants Nichols, Weikel, Frankenstein, Hoch, Hoose, Smith and Walborn will be granted in part and denied in part. An appropriate Order will issue.

      /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      February 27, 2014